**UNITED STATES of America ex rel. Joseph CUMMINGS, Petitioner-Appellant,**

v.

**John L. ZELKER, Warden, Green Haven Prison, Stormville, New York, Respondent-Appellee.**

No. 174, Docket 71-1609.

United States Court of Appeals, Second Circuit.

Argued Oct. 7, 1971.

Decided Feb. 2, 1972.

Certiorari Denied May 15, 1972. See 92 S.Ct. 1800.

Arthur J. Murphy, Jr., New York City, for petitioner-appellant.

Samuel A. Hirshowitz, First Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen. of N. Y., Brenda Soloff, Asst. Atty. Gen., of counsel), for respondent-appellee.

Before WATERMAN and SMITH, Circuit Judges, and ZAMPANO, District Judge.*

ZAMPANO, District Judge:

In 1969, petitioner Joseph Cummings was convicted in the County Court of Nassau County, New York, of burglary in the third degree, and was sentenced to a term of imprisonment for seven years. Having exhausted his state appellate remedies, the petitioner applied to the United States District Court for the Eastern District of New York, John R. Bartels, J., for habeas relief on the ground that the victim's in-court identification testimony was tainted by two allegedly impermissible pretrial identification procedures used by the police. In a well-reasoned opinion, 329 F.Supp. 4, Judge Bartels denied the writ, and this appeal followed. We find no error and affirm the order of the District Court.

The relevant facts may be briefly summarized. On October 24, 1968, the prosecution's principal witness, Cecilia E. Camardella, returned to her home following a shopping trip. She observed through a window a tall, thin, white young man wearing a tan sweater. He was standing in her backyard at a distance of 20 feet, and she stared directly at his face for 15 seconds. Upon hearing a noise, she ran outside, only to encounter a second man leaving the house from another doorway. She described this person as as a "dark haired, stocky youth, white with a flushed face." The police were notified and, 15 minutes later, two men who matched the descriptions given to the police by Mrs. Camardella were apprehended as they were running along railroad tracks about a mile and a half from the scene of the crime. The two suspects were returned in a police car to the Camardella resi-

---

* United States District Judge for the District of Connecticut, sitting by designation.

dence where, at the suggestion of an officer, Mrs. Camardella glanced at them through the car window. She stated the men looked like the burglars but were dressed differently. A policeman then produced a tan sweater which she said she recognized.

A short time later Mrs. Camardella went to police headquarters, viewed the two men through a one-way mirror, and again identified the petitioner and his co-defendant as the perpetrators of the crime. After the *Miranda* warnings were read to the petitioner, he admitted his participation in the burglary.

Prior to the trial, the petitioner was afforded a *Wade* hearing, at the conclusion of which the state judge ruled that the station house identification could not be adduced at trial, but that the evidence of the patrol car confrontation would be admissible. The court declined to suppress any in-court identification by Mrs. Camardella on the ground that such an identification was the product of her observation of the petitioner at the time of the crime and was not tainted by her later confrontations with him.

■ The petitioner's first claim is that the circumstances surrounding Mrs. Camardella's identification of him in the police car were "impermissibly suggestive" within the meaning of Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), and Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). However, it is now settled law that prompt on-the-scene confrontation is "consistent with good police work", United States v. Sanchez, 422 F.2d 1198, 1200 (2 Cir. 1970), and does not offend the principles established in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). See United States v. Davis, 399 F.2d 948 (2 Cir.), cert. denied, 393 U.S. 987, 89 S.Ct. 465, 21 L.Ed.2d 449 (1969); United States ex rel. Frizer v. McMann, 437 F.2d 1309 (2 Cir. 1970), cert. denied, 402 U.S. 1010, 91 S.Ct. 2196, 29 L.Ed.2d 433 (1971).

■ The confrontation in this case was a reasonable one. When the two suspects were brought to Mrs. Camardella's house, only 30 minutes had elapsed since she reported the crime. It must have been obvious to the witness that the suspects were apprehended solely on the basis of the descriptions given by her to the police. Thus this prompt confrontation was desirable because it served to insure "the immediate release of an innocent suspect and at the same time [to] enable the police to resume the search for the fleeing culprit while the trail is fresh." Bates v. United States, 132 U.S.App.D.C. 36, 405 F.2d 1104, 1106 (1968). We view the instant situation as one in which prudent police work necessitated the on-the-spot identification in order to resolve any possible doubts the police may have had when they first took the petitioner into custody.

The second confrontation at the station house presents a much closer question. The state trial court doubted its legality under *Wade* and suppressed its use at trial. In many respects the "showup" was less justifiable than the patrol car identification procedure. The witness had already identified the two suspects; consequently it was unlikely that another confrontation would indicate to the police that they had seized the wrong persons. Time was not of the essence, a formal lineup easily could have been arranged, and there appeared to be no "substantial countervailing policy considerations * * * against the requirement of the presence of counsel." United States v. Wade, supra, 388 U.S. at 237, 87 S.Ct. at 1937.

■ However, even assuming, as did the District Court, that the station house identification procedure did not conform to *Wade* requirements, it did not automatically mandate the exclusion of Mrs. Camardella's courtroom identification. Instead the burden was on the prosecution to demonstrate by clear and convincing evidence that the in-court

identification was based upon observations of the petitioner other than at the improper confrontation. United States v. Wade, supra, at 240, 87 S.Ct. 1926; United States v. Famulari, 447 F.2d 1377 (2 Cir. 1971). We are satisfied the prosecution did carry its burden of proof and that the precinct identification did not taint the witness' testimony nor infect the trial.

■ The crime was committed in broad daylight, and Mrs. Camardella testified she was able to get a good look at the petitioner's face. The identification procedures took place within an hour after the crime, and thus it can fairly be assumed that her recollection was fresh. United States ex rel. Anderson v. Mancusi, 413 F.2d 1012, 1013 (2 Cir. 1969). The certainty and trustworthiness of her initial identification were corroborated by her perception of an alteration in the petitioner's clothing. Moreover, at both the *Wade* hearing and at trial Mrs. Camardella, despite searching cross-examination, steadfastly maintained that she was able to identify the petitioner from her observation of him during the course of the burglary. Finally, this was not a case where the prosecution relied upon identification alone; the petitioner's confession constituted substantial additional evidence of guilt. Cf. United States v. Roth, 430 F. 2d 1137, 1141 (2 Cir. 1970), cert. denied, 400 U.S. 1021, 91 S.Ct. 583, 27 L.Ed.2d 633 (1971); United States ex rel. Phipps v. Follette, 428 F.2d 912, 916 (2 Cir. 1970).

We find these factual circumstances clearly support the District Court's determinations that the identification procedure in the patrol car was not such as to create a likelihood of irreparable misidentification, and that there was clear and convincing evidence that the precinct confrontation was not the basis of Mrs. Camardella's in-court identification.

Affirmed.