■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSEPH POPE, Appellant.—Judgment, Supreme Court, New York County (Roger Hayes, J.), entered March 31, 1989, convicting defendant, after a jury trial, of the crime of robbery in the second degree (Penal Law § 160.10 [2] [a]) and sentencing him, as a predicate felony offender, to an indeterminate term of imprisonment of from seven to fourteen years, is unanimously affirmed.

On July 25, 1988, sometime after 12:30 A.M., defendant was arrested by New York City Police Officers James Blaisdell (Officer Blaisdell) and Joseph Kaye (Officer Kaye). By indictment number 6643-1988, filed August 9, 1988, a New York County Grand Jury charged defendant with the crime of robbery in the second degree (one count).

At the trial, the People's case against defendant, in substance, consisted of testimony from Mr. Patrick McAteer (victim), Officers Blaisdell and Kaye, and Detective Duhammel Juarbe.

The victim testified, in substance, that he was a married, 55 year-old bus operator, who, since 1961, had been employed by the Metropolitan Transit Authority, and, on July 24, 1988, he started a five week vacation. Further, he stated that, during the evening of July 24, 1988, he consumed a number of alcoholic beverages, and, at approximately 12:30 A.M., as he was opening the side door of Smith's Pub, located in the vicinity of 8th Avenue and 44th Street, Manhattan, "I got pushed from behind and I fell down * * * against the side of the * * * wall at the doorway. I had put my hand out to block myself and I looked and somebody had tore my left pocket down and I saw the man with his hand in my pocket. Then, I heard 'hold it, police' ". Subsequently, the victim identified the defendant, as "the man with his hand in my pocket". Also, the victim testified that, when he was attacked, he had several

single dollar bills and a red and black handkerchief in the left pocket. Finally, the victim testified that, as a result of the fall, he injured his left little finger.

Officers Blaisdell and Kaye testified that, at 12:30 A.M., they were on duty, in plainclothes, seated in a parked unmarked patrol car, on the north side of 44th Street and 8th Avenue. Further, Officer Blaisdell stated that he observed the defendant push the victim to the ground, and then the defendant "went through [the victim's] pockets, ripping one, and after taking his [defendant's] hand out of one of the [victim's] pockets, put that hand in his [defendant's] own pocket". Officer Blaisdell then testified that Officer Kaye and he exited their vehicle, ran over to the scene of the crime, stopped the defendant, as he was leaving, and "[w]e told him, 'Police, don't move,' and we gave him a pat-down. I felt an object in his pocket. When I reached in for that object, it was two one-dollar bills and a crinkled up handkerchief which, at that time [the victim] ID'd as being his, and [defendant] stated that the two dollar bills were his but that the handkerchief was the [victim's]".

Officer Kaye's testimony, in substance, was similar to that of Officer Blaisdell.

Detective Juarbe testified that, after defendant's arrest, he advised defendant of his *Miranda* rights, and defendant waived them. Thereafter, Detective Juarbe stated that defendant gave him a signed statement, in which defendant admitted robbing the victim of two dollars.

The defense case consisted mainly of defendant's own testimony. In that testimony, defendant denied robbing the victim, and he denied making an incriminating statement to the Detective. Further, defendant admitted that he had previously been convicted of a misdemeanor and a felony.

Subsequently, the jury found the defendant guilty of the crime of robbery in the second degree. Defendant appeals.

The only contention of the defendant is that the evidence of the injury to the victim's left little finger was insufficient, as a matter of law, to permit a finding that defendant caused "physical injury", within the meaning of Penal Law § 160.10 (2) (a), which states, in pertinent part,

"2. In the course of the commission of the crime or immediate flight therefrom, he * * *

"(a) Causes physical injury to any person who is not a participant in the crime".

Penal Law § 10.00 (9) defines physical injury as "impair-

ment of physical condition or substantial pain." We stated, in *People v Oquendo* (134 AD2d 203 [1st Dept 1987], *lv denied* 70 NY2d 959 [1988]), that, although the degree of impairment of physical condition or substantial pain needed to establish physical injury, as defined in Penal Law § 10.00 (9) "is generally to be decided by the trier of fact, the legal authority is clear that 'there is an objective level * * * below which the question is one of law' *(Matter of Philip A.,* 49 NY2d 198, 200)". Repeatedly, it has been held that, as a matter of law, "petty slaps, shoves and kicks do not amount to 'physical injury' under the statute [Penal Law § 10.00 (9)]" *(People v Chesebro,* 94 AD2d 897 [1983]; *Matter of Philip A.,* 49 NY2d 198, 200 [1980], *supra).*

We find that the fact that the victim's injury was not treated by a physician does not mean that he did not suffer " 'impairment of physical condition or substantial pain' " *(People v Chesebro, supra,* at 897-898). The Court of Appeals, in *Matter of Philip A. (supra,* at 200), noted that persons tolerate pain differently, since "[p]ain is, of course, a subjective matter. Thus, touching the skin of a person who has suffered third degree burns will cause exquisite pain, while the forceful striking of a gymnast in the solar plexus may cause him no discomfort at all".

Herein, the victim testified that, the day after the incident, his left little finger was "very, very sore", he could move the finger only "painfully", the next morning it was "throbbing" and he probably took an "aspirin", since his wife is a medical nurse, he had some knowledge of how to treat injuries, and "I * * * cut out some splinters of wood and put it on my finger, then wrapped surgical tape around that and that was comfortable * * * It [the splint] was on there for about a week, seven to eight days". In view of the fact that the victim, a bus driver, was on vacation during the time that he has healing, he did not lose any time from work.

We have held that police corroboration of the victim's injury is a factor that the jury may "consider as proof of physical injury" *(People v Pagan,* 160 AD2d 284, 285 [1st Dept 1990], *lv denied* 76 NY2d 793 [1990]). In the instant case, Officers Blaisdell and Kaye corroborated the victim's injury. Officer Blaisdell testified that he observed that the victim's "arm and his hand were scraped, bruised", and Officer Kaye testified that the victim told him, at the crime scene, that "his left pinkey *[sic]"* had been injured.

Applying the legal authority, discussed *supra,* to the facts before us, since we find, as a matter of law, that the victim's

injury was more than the result of a " 'petty slap [and/or] shove' " *(Matter of Philip A., supra,* at 200), we further find that it was for the trier of the fact to determine whether the defendant inflicted physical injury, involving "impairment of physical condition or substantial pain" (Penal Law § 10.00 [9]), on the victim, during "the course of the commission of the [robbery]" (Penal Law § 160.10 [2] [a]). When we view the evidence in the light most favorable to the People, as required *(see, People v Contes,* 60 NY2d 620 [1983]), we find that there is legally sufficient evidence to support the jury conviction of the defendant of the crime of robbery in the second degree *(People v Bogan,* 70 NY2d 860, 863 [1987], *rearg denied* 70 NY2d 951 [1988]; *People v Pagan, supra; People v Rios,* 150 AD2d 620 [1989], *lv denied* 74 NY2d 899 [1989]).

Accordingly, we affirm. Concur—Rosenberger, J. P., Ellerin, Wallach, Ross and Smith, JJ.