**Manuel VALTIN, Petitioner,**

v.

**M.L. HOLLINS, Superintendant, Respondent.**

**No. 02 CV 823(VM).**

United States District Court, S.D. New York.

March 5, 2003.

Manuel Valtin, Rome, NY, pro se.

Beth J. Thomas, Asst. U.S. Atty., New York, NY, for Respondent.

### DECISION AND ORDER

MARRERO, District Judge.

Pro se petitioner Manuel Valtin ("Valtin"), incarcerated at New York State's Mid–State Correctional Facility, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He claims that his state court conviction for Robbery in the Second Degree violated his rights under the Fourth, Fifth and Fourteenth Amendments of the United States Constitution because: (a) his conviction was against the weight of the evidence, (b) the trial court's refusal to deliver a consciousness of guilt charge to the jury deprived him of a fair trial, (c) the police did not have reasonable cause to stop him while he was walking on the street, and (d) the show-up procedure used to identify him as the assailant was unduly suggestive. The State of New York (the "State") filed an opposition on behalf of respondent M.L. Hollins, who was the Superintendent of Mohawk Correctional Facility, where Valtin was incarcerated when he first filed his habeas petition. For the reasons set forth below, Valtin's petition is denied.

### I. FACTUAL BACKGROUND AND STATE PROCEEDINGS

On November 10, 1999, Valtin was convicted by a jury in Supreme Court, New York County, of Robbery in the Second Degree (New York Penal Law § 160.10[2][a] ). Valtin was sentenced as a predicate felon to a prison term of eight years.

The evidence presented at Valtin's trial (the "Trial") convinced the jury that around 12:30am on February 26, 1999, Valtin attacked and robbed Farhad Farmian ("Farmian") as Farmian walked home from work on Lafayette Street in Manhattan on a cold and wet winter evening. As described by Farmian, Valtin jumped out from behind a parked car and punched Farmian in the mouth, knocking him down and cutting his lip. Hitting the ground caused a cheap pen Farmian was carrying in his pocket to fall out, and also popped open the clasp on his Rolex watch, which then fell off his wrist to the ground.

When Farmian got back up, Valtin was standing one to two feet to his side. Farmian claimed that Valtin, who appeared agitated and nervous, demanded all of Farmian's money and told him to be quiet.

After taking the $4.00 Farmian had on his person, Valtin then told Farmian to turn around, walk away and not look back or he would kill him. Farmian left behind his watch and pen, which were never recovered. Farmian testified that Valtin moved toward the items as Farmian walked away, although Farmian did not actually see Valtin take the items.

Farmian immediately took a cab back to his nearby apartment and contacted the police. A few minutes later, police officers Thomas McGillicuddy ("McGillicuddy") and Vincent Ballesteri ("Ballesteri"), two plain-clothes officers who were patrolling in an unmarked van, heard a police radio alert about the incident and quickly discovered Valtin walking alone a few blocks from the scene of the crime. The officers followed Valtin, watched him remove a camouflage jacket he was wearing over his clothing and then saw him take off a gray zippered sweater he was wearing underneath the jacket. Carrying the gray sweater in his hand, Valtin continued walking and entered a local bodega, where he purchased some snack food and then discarded the sweater in a trash can.

After retrieving the sweater from the trash, the officers arrested Valtin and notified the police dispatcher, who contacted two uniformed officers, Harry Hernandez and John Paone ("Paone"), who were interviewing Farmian at his nearby apartment. Farmian was quickly brought to the scene, where he identified Valtin—who was not handcuffed and was surrounded by several plain-clothes officers—from a distance of approximately 11 to 20 feet in a procedure known as a "show-up identification" (the "Show-up"). Farmian also identified the discarded sweater as the clothing item Valtin had been wearing when he robbed Farmian.

Valtin alleges several constitutional violations occurred during the Trial. First, Valtin contends that his conviction was not supported by legally sufficient evidence. Second, Valtin argues he was deprived of a fair trial when the trial court denied his request to charge the jury that the proof that he discarded the sweater amounted at most to consciousness of guilt evidence with slight or no evidentiary value. Third, Valtin claims that the police did not have reasonable cause to stop him and, by doing so, they violated his Fourth Amendment Right to be free from unreasonable search and seizure. Finally, Valtin alleges that the Show-up was inadmissable because it was unduly suggestive and there were no exigent circumstances that justified its use.

After his conviction, Valtin appealed to the New York Supreme Court, Appellate Division, which affirmed Valtin's conviction. *See People v. Valtin*, 284 A.D.2d 203, 728 N.Y.S.2d 435 (1st Dept.2001). On October 3, 2001, the New York State Court of Appeals denied Valtin's application for leave to appeal. *See People v. Valtin*, 97 N.Y.2d 643, 735 N.Y.S.2d 500, 761 N.E.2d 5 (N.Y.2001). Valtin filed a habeas petition with this Court on February 4, 2002.

## II. *DISCUSSION*

### A. *STANDARD OF REVIEW*

Valtin's petition is governed by 28 U.S.C. § 2254, as amended by the Anti–Terrorism and Effective Death Penalty Act ("AEDPA"). *See Morris v. Reynolds*, 264 F.3d 38 (2d Cir.2001). Under AEDPA, a federal court may not grant a writ of habeas corpus with respect to any claim that was "adjudicated on the merits" in the state court unless the state court decision is either contrary to clearly established federal law or involved an unreasonable application of clearly established federal law, as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d); *Morris*, 264 F.3d at 46 (citing *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). Moreover, the

state court's application of clearly established federal law must be objectively unreasonable, not merely erroneous. *See Williams,* 529 U.S. at 387 n. 14, 120 S.Ct. 1495.

In the instant case, the claims Valtin raises in his petition were adjudicated on the merits in the State proceedings. *See Valtin,* 728 N.Y.S.2d at 435 (finding Valtin's conviction to be based on legally sufficient evidence and not materially affected by trial court's refusal to deliver consciousness of guilt instruction). Thus, this Court is constrained under § 2254(d) to give due deference to the State court's final decision unless that determination is deemed to be an unreasonable application of, or contrary to, clearly established federal law.

## B. *WEIGHT OF THE EVIDENCE*

Valtin first contends that the jury's verdict of guilty was against the weight of the evidence presented during the Trial. The Second Circuit has held that a "state prisoner 'is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.'" *Einaugler v. Supreme Court of the State of New York,* 109 F.3d 836, 839 (2d Cir.1997) (quoting *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)); *accord Farrington v. Senkowski,* 214 F.3d 237, 240–241 (2d Cir.2000); *Rukaj v. Fischer,* No. 02 Civ. 3529, 2003 WL 194201, at *3 (S.D.N.Y. Jan.28, 2003). Moreover, the Court must consider "the evidence in the light most favorable to the prosecution." *See Ponnapula v. Spitzer,* 297 F.3d 172, 176 (2d Cir.2002). Thus, on the matter of the sufficiency of the evidence, Valtin has a heavy burden and must "rebut[ ] the presumption that all factual determinations made by the state court were correct." *Id.; see also* 28 U.S.C. § 2254(e).

■ After reviewing the evidence presented at the Trial in the light most favorable to the prosecution, the Court is not persuaded that Valtin's attack on the sufficiency of the evidence establishes grounds for habeas relief. Farmian positively identified Valtin, both at the Show-up and during the Trial, and his initial description to the police before Valtin was apprehended substantially matched Valtin's actual appearance in several aspects, including clothing, shoes and hair. (Trial Transcript ("Tr."), at 159.) Moreover, Farmian's identification at the Show-up occurred less than 45 minutes after the robbery, (Tr., at 52, 56), which meant that the mental image of Valtin was still fresh in Farmian's mind. Valtin also was discovered only a few blocks away from the scene of the crime, walking alone late at night on a cold evening while removing a zippered sweater that Farmian had described his assailant as having worn. (Tr., at 96–97.) Based on all of this evidence, and after having witnessed Farmian testify in person about the incident, the jury found Valtin guilty. The Court is not persuaded that this verdict was unreasonable, irrational or unsupported by the evidence.

■ Valtin also protests that the State failed to prove the requisite element of physical injury required for Robbery in the Second Degree. *See* New York Penal Law § 160.10[2][a] (McKinney 1998) ("A person is guilty of robbery in the second degree when he forcibly steals property and ... [i]n the course of the commission of the crime or of immediate flight therefrom, he ... [c]auses physical injury to any person who is not a participant in the crime."). The evidence presented at the Trial showed that Farmian had sustained a cut lower lip which bled and became swollen, had severe aches and pain in his head, felt nauseous and was significantly dizzy. (Tr., at 122, 168–70.) Due to these medical

complications, Farmian visited the hospital the next morning, and the hospital record describing these symptoms was admitted as a prosecution exhibit. (Tr., at 170–73.) The Court is persuaded that this evidence as offered to the jury provided sufficient basis to find that Farmian had sustained physical injury during the commission of the crime. Therefore, the Court rejects Valtin's habeas claim regarding the sufficiency of the evidence presented at the Trial.

### C. CONSCIOUSNESS OF GUILT JURY CHARGE

▇ Valtin's next claim is that he was deprived of a fair trial by the trial court's refusal to instruct the jury that evidence of Valtin discarding his sweater was at most consciousness of guilt evidence with slight or no evidentiary value. An erroneous state jury instruction is typically grounds for federal habeas relief only if it "so infected the entire trial that the resulting conviction violates due process." *Blazic v. Henderson,* 900 F.2d 534, 541 (2d Cir.1990)(quoting *Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)); *see also Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (stating that where a petitioner establishes that constitutional error occurred, he is not entitled to relief unless the error had a "substantial and injurious effect or influence in determining the jury's verdict"). With an omitted jury instruction, Valtin "bears an 'especially heavy' burden in demonstrating ... constitutional error [because an] 'omission, or an incomplete [jury] instruction, is less likely to be prejudicial than a misstatement of the law.' " *Ayala v. Hernandez,* 712 F.Supp. 1069, 1075 (E.D.N.Y.1989) (citing *Henderson v. Kibbe,* 431 U.S. 145, 155, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977)); *see also Boyd v. Babbie,* No. 95 Civ. 7862, 1999 WL 138927, at *4 (S.D.N.Y. Mar.15, 1999). Courts in the Second Circuit, when presented with the question of an omitted jury instruction in the context of a habeas claim, have sought to compare "the instructions which were actually given with those that should have been given" in order to determine whether it is "logical to conclude that [the omitted] instruction would ... have affected the verdict." *Id.,* 431 U.S. at 156, 97 S.Ct. 1730.

▇ In the instant case, it is not logical to conclude that the omitted instruction would have affected the verdict. First, the evidence of Valtin throwing away his sweater, in the context of the entire Trial's evidence and especially as compared to the victim's identification of Valtin, was not pivotal to the prosecution's case. A reading of the record as a whole supports a conclusion that a rational jury could reasonably have reached a guilty verdict without ever having heard that Valtin had disposed of the sweater. Second, given the overwhelming amount of other evidence presented against Valtin at the Trial, including Farmian's pre-arrest description of the robber, and his identification of Valtin as the assailant and Valtin's proximity to the area shortly thereafter under the prevailing weather conditions, the Court is not persuaded that the failure of the trial court to give the jury an instruction regarding consciousness of guilt evidence could have infected the verdict or substantially influenced the jury in any way. *See Gonzalez v. Walker,* 2001 U.S. Dist. LEXIS 10844, at *17 (S.D.N.Y. July 31, 2001) (finding that omission of consciousness of guilt instruction to jury was not injurious when considering abundance of other evidence presented against defendant at trial). Thus, the Court rejects Valtin's claim that the omission of the instruction violated his constitutional rights.

### D. FOURTH AMENDMENT CLAIM

▇ Valtin also argues that he was arrested without probable cause in violation

of the Fourth Amendment. A Fourth Amendment claim arising from a state criminal conviction is barred from federal habeas corpus review unless the State denied the petitioner a full and fair opportunity to litigate the claim. *See Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). As a result, a federal court is not permitted to judge the merits of the state court's decision, but instead must evaluate only whether the State's procedure for resolving Fourth Amendment claims is "facially adequate," and determine that no "unconscionable breakdown" of the process occurred in the petitioner's case. *See Capellan v. Riley,* 975 F.2d 67, 71 (2d Cir.1992). An unconscionable breakdown occurs when the state court fails to conduct a reasoned inquiry into the petitioner's claim. *See Papile v. Hernandez,* 697 F.Supp. 626, 633 (E.D.N.Y.1988).

Federal courts have approved New York's procedure for litigating Fourth Amendment claims—a process embodied in N.Y.Crim. Proc. Law § 710.10 *et seq.* (McKinney 1995)—as being facially adequate. *See Capellan,* 975 F.2d at 70 n. 1. Therefore, "federal scrutiny of [petitioner's] Fourth Amendment claim[ ] is not warranted unless he demonstrates that he was in fact precluded from utilizing [that procedure] by an unconscionable breakdown in the review process." *Shaw v. Scully,* 654 F.Supp. 859, 863–64 (S.D.N.Y. 1987).

■ In the instant case, Valtin availed himself of the procedures set forth in Section 710.10 *et seq.,* and the state courts conducted a reasoned inquiry into the relevant questions of facts and law. On October 4, 1999, the trial court held a pretrial hearing (the "Hearing") where evidence concerning the circumstances surrounding petitioner's arrest was introduced. McGillicuddy and Paone and Detective Joseph Scalogna testified, and were cross-examined by Valtin, who at the time was acting as his own lawyer, with assistance from Stephen Pokart, his former attorney and then legal advisor. Immediately following the Hearing, the judge presiding over the Hearing issued an oral opinion denying all motions by Valtin, including the one to exclude as inadmissible the evidence pertaining to Farmian's identification of Valtin as his assailant. In his opinion, the judge asserted that McGillicuddy and Ballesteri acted "in the least intrusive manner possible" in stopping Valtin, and they had a reasonable basis for detaining Valtin— namely, his discarding of the sweater which resembled the item of clothing described on the police radio as being worn by the perpetrator in the commission of the crime. (See Transcript of Hearing, dated October 4, 1999, at 121.)

The Appellate Division subsequently affirmed the hearing court's ruling on the merits. *See Valtin,* 728 N.Y.S.2d at 435. Since the hearing transcript and the opinion of the hearing judge both reflect a "reasoned inquiry" into Valtin's claims, the Court is persuaded that Valtin was not the victim of an unconscionable breakdown in state procedure and that his Fourth Amendment claim is unreviewable by this Court. *See Ortiz v. Artuz,* 113 F.Supp.2d 327, 336 (E.D.N.Y.2000).

### E. SHOW–UP IDENTIFICATION

■ In his final habeas claim, Valtin asserts that the Show-up was improperly suggestive and was not justified by any exigent circumstances. Over the past twenty-five years, the Supreme Court has developed the general principle that, while a jury should make the ultimate decision on the reliability of eyewitness identification testimony, such testimony can be excluded in order to preserve the defendant's due process rights if the degree of unreliability is "so impermissibly suggestive as to

give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *see also Kennaugh v. Miller,* 289 F.3d 36, 43–44 (2d Cir.2002). However, a court can still admit such testimony if the court determines it to be independently reliable. *See Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977) ("[R]eliability is the linchpin in determining the admissibility of identification testimony."). Thus, "an alleged impermissibly suggestive identification procedure must be weighed against other considerations which may support reliability." *Alvarez v. Fischer,* 170 F.Supp.2d 379, 384 (S.D.N.Y. 2001). Such factors include the witness's opportunity to view the accused at the time of the crime; his degree of attention; the accuracy of his prior description of the accused; the degree of certainty demonstrated by the witness at the confrontation; and the amount of time that had passed between the crime and the confrontation. *See Manson,* 432 U.S. at 114, 97 S.Ct. 2243.

In the instant case, Valtin asserts that the Show-up was unduly suggestive because Valtin was the only person "standing there facing the wall for the complainant to identify." (Supplemental Brief for Defendant Filed With New York Supreme Court, Appellate Division, First Department on February 26, 2001, attached as Exhibit B to Affidavit by Beth Thomas in Opposition to Petition for a Writ of Habeas Corpus, at 14.) Furthermore, Valtin argues that there was no pressing reason to utilize the Show-up as opposed to a line-up or photographic array, which would have required Farmian to pick Valtin out of a group and presumably would have had a lower risk of suggestiveness.

■ Valtin, however, fails to distinguish his Show-up from other exigent showup identifications effected immediately following a street crime that other courts in this Circuit routinely have held to be permissible. The Second Circuit has held that, as opposed to police-arranged lineups, "prompt confrontation [is] desirable because it serve[s] to insure 'the immediate release of an innocent suspect and at the same time [to] enable the police to resume the search for the fleeing culprit while the trail is fresh.'" *United States ex rel. Cummings v. Zelker,* 455 F.2d 714, 716 (2d Cir.1972), *cert. denied,* 406 U.S. 927, 92 S.Ct. 1800, 32 L.Ed.2d 128 (1972). Accordingly, "it is now settled law that prompt on-the-scene confrontation is 'consistent with good police work' and does not offend the principles established in *United States v. Wade." Id.* (citing, inter alia, *United States v. Sanchez,* 422 F.2d 1198, 1200 (2d Cir.1970)); *accord Jamison v. Grier,* No. 01 Civ. 6678, 2002 WL 100642, at *20 (S.D.N.Y. Jan.25, 2002).

■ In the instant case, the Show-up constituted a desirable, prompt, on-the-scene confrontation that served to insure that Valtin was the same person described by Farmian who allegedly had just robbed Farmian. Such a situation qualifies as one where "prudent police work necessitated the on-the-spot identification in order to resolve any possible doubts the police may have had when they first took the petitioner into custody." *Zelker,* 455 F.2d at 716; *see also United States v. Butler,* 970 F.2d 1017, 1021 (2d Cir.1992) (identification proper where, less than thirty minutes after the robbery of a check cashing business, suspects were brought to victim who was sitting in a police car).

Moreover, this Court must evaluate the situation based on the factors articulated in *Manson.* Applying those factors, the Court is persuaded that Farmian's identification was reliable. First, Farmian had sufficient time to view his assailant when the robbery occurred, and he gave a de-

scription that accurately identified Valtin's footwear, his dark baggy pants, the color and style of the zippered sweater he was wearing, and his short hair.[1] (Tr., at 159.) Moreover, Farmian recognized Valtin immediately when he arrived at the scene of the crime, (Tr. at 173), indicating a high degree of certainty in his identification.

Finally, the close proximity in both time and location between the crime and the Show-up here helped ensure its reliability. The fact that the Show-up took place approximately four blocks away from the crime, and within thirty to forty-five minutes of the event, mitigated any potential prejudice that might have resulted from Farmian viewing Valtin in police custody. *See, e.g., Johnson v. Gilmore*, 940 F.2d 665, 1991 WL 155984, at *4 (7th Cir. Aug.15, 1991) (unpublished table decision) (show-up occurring twelve to eighteen minutes after crime is close enough in proximity to "significantly diminish[ ] the concern of misidentification due to fading memory"); *Zelker*, 455 F.2d at 716 (holding show-up to be reasonable because "[w]hen the two suspects were brought to [be seen by the identifier], only 30 minutes had elapsed since [the identifier had] reported the crime."); *see also Willin v. Ajello*, 496 F.Supp. 804, 809 (D.Conn.1980) ("Such promptness of identification is recognized to be a powerful sign of its trustworthiness, for it suggests that the identification was based on a fresh mental picture of the criminal's features.").

Furthermore, Valtin was not handcuffed and was surrounded by plain-clothes officers, not uniformed ones, further reducing any potential prejudice that could occur from viewing Valtin in a custodial situa-

tion. *Boles v. Senkowski*, 878 F.Supp. 415, 421–23 (N.D.N.Y.1995) (showup identification not impermissibly suggestive where mugging victim identified unhandcuffed suspect on a street corner by driving by in a police car twenty minutes after the crime); *Styles v. Zandt*, No. 94 Civ. 1863, 1995 WL 326445, at *4 (S.D.N.Y. May 31, 1995) (citing fact that petitioner "was neither in handcuffs nor visibly restrained" as factor in judging show-up identification permissible). The Court does note that Paone testified that he had told Farmian before they went to the site of the Show-up that the police had a possible suspect for him to view, (Tr., at 214.), a fact that could have increased the level of suggestiveness. However, in the context of the other factors discussed above, the Court is not persuaded that the Show-up was unduly or impermissibly suggestive and therefore concludes that the evidence of it was properly admitted.

### III. *CONCLUSION AND ORDER*

For the reasons discussed above, it is hereby

**ORDERED** that Valtin's petition for a writ of habeas corpus is denied.

As Valtin has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. See 28 U.S.C. § 2253(c); *United States v. Perez*, 129 F.3d 255, 259–60 (2d Cir.1997); *Lozada v. United States*, 107 F.3d 1011, 1014–16 (2d Cir.1997). Pursuant to 28 U.S.C. § 1915(a)(3), the Court certifies that any appeal from this Order would not be taken in good faith. See

---

**1.** While Valtin argues that Farmian's initial description of the zippered sweater as a ski jacket indicates that Farmian's description was inaccurate, the Court's review of the record persuades it that Farmian's initial description accurately captured the look, style and appearance of the zippered sweater and his use of an incorrect term for it reflected a mere semantic mistake that does not constitute grounds for a finding of constitutional error in Valtin's conviction.

*Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

The Clerk of the Court is directed to close this case.

**SO ORDERED:**