**Paul JAMES, Petitioner,**

v.

**William MAZZUCA, Respondent.**

**No. 04 Civ. 4347(GBD)(FM).**

United States District Court,
S.D. New York.

July 14, 2005.

Robert Caldwell, Otisville, NY, pro se.

### REPORT AND RECOMMENDATION TO THE HONORABLE GEORGE B. DANIELS *

MAAS, United States Magistrate Judge.

### I. *Introduction*

Petitioner Paul James ("James") brings this *pro se* habeas corpus proceeding pursuant to 28 U.S.C. § 2254 to challenge his conviction, following a three-day jury trial, on one count each of Attempted Robbery in the Second Degree and Assault in the Second Degree in Supreme Court, New York County. (*See* Pet. ¶¶ 1, 4). On November 14, 2001, the trial judge, Justice Laura Visitacion–Lewis, sentenced James to concurrent seven-year terms of imprisonment. (*Id.* ¶¶ 2–3).

In his petition, James advances two claims. First, he contends that the evidence presented at trial was legally insufficient to sustain the jury's verdict because the prosecution failed to prove beyond a reasonable doubt that the victim suffered any "physical injury." (Pet. ¶ 12.A; Pet. Attach. (Supporting Fact) ("SF") at 3). Second, James contends that he was not attempting to rob or assault the complainant. (*See* SF at 1). As set forth in greater detail below, James has failed to show

---

* This Report and Recommendation was prepared with the assistance of Christine Chuang, a student at the University of Michigan Law School, who is serving as an intern in my Chambers this summer.

that his constitutional rights were violated. Accordingly, his petition should be denied.

## II. *Background*

### A. *People's Case*

The People's evidence at trial would have permitted a reasonable juror to find as follows:

On the morning of June 24, 2001, Debra Carroll ("Carroll"), an elementary school teacher and former registered nurse, was walking on 138th Street in Harlem, on her way to church. (Tr. at 206–10).[1] Carroll was carrying a shopping bag in her right hand and a pocketbook on her left shoulder. (*Id.* at 210). Because the pocketbook was "kind of ... heavy," she decided to transfer it to her hand. (*Id.*). As she was doing so, Carroll heard footsteps behind her left shoulder and moved to the right to let the person pass. (*Id.*). As she saw a man's face to her left, she felt her bag being pulled away from her, which led to "a tug of war." (*Id.* at 210, 212). The man then hit her on the side of the face, causing her to fall to the ground, still clutching her bag. (*Id.* at 212). In an effort to free the bag, the man began "pummel[ing]" her upper body, right shoulder and right arm with his closed fist. (*Id.* at 212–13). While he was hitting her, Carroll screamed for help and flailed her legs. (*Id.* at 213–14). Suddenly, the man stopped hitting her and ran away. (*Id.* at 214).

Maurice Grant ("Grant"), a bystander who heard Carroll's screams, looked down the block and saw a man standing over Carroll. (*Id.* at 245–46). When the man approached him walking "[k]ind of fast," Grant confronted him, asking what he had done to Carroll. (*Id.* at 247). After the man threatened to shoot or harm him, Grant punched him and eventually was able to subdue him. (*Id.* at 247–48). Grant then held the man until the police arrived. (*Id.* at 248–50, 267–68). Carroll, Grant and the arresting officer each identified James as the man they encountered on 138th Street that day. (*Id.* at 211, 249, 255).

As a result of the incident, Carroll's eyeglasses were knocked off her face and broken. (*Id.* at 216). She also sustained injuries to the right side of her face and her neck, as well as her left shoulder and left hip, and had a small scratch behind her right ear caused by a broken earring. (*See id.* at 218). Her face became swollen and her neck became so stiff that it was "very painful" to move her head. (*Id.* at 219). Her jaw also was sore, "as if [she] had bitten into a jaw breaker and just popped the bone or something." (*Id.*). These symptoms lasted about one week. (*Id.*). During that time, Carroll called a doctor, but he was on vacation. (*See id.* at 219–20). However, because she was trained as a nurse, Carroll knew that she did not have any broken bones. (*Id.* at 220). She therefore treated herself simply by placing heating pads on her neck. (*Id.* at 219). Carroll explained that she returned to work the next day because she was trying to achieve a perfect attendance record at her school. (*See id.* at 220).

### B. *Defense Case*

The defendant did not testify or present any evidence.

---

1. "Tr." refers to the transcript of the jury trial on October 29, 30, and 31, 2001. "S." refers to the transcript of the November 14, 2001 sentencing. "Ex." followed by a number refers to the exhibits to the Petition (which actually are unnumbered). "Ex." followed by a letter refers to the exhibits annexed to the undated Declaration of Assistant Attorney General Luke Martland ("Martland Decl.").

## C. *Verdict*

On October 31, 2001, after brief deliberations, the jury returned a guilty verdict on both counts. (*See id.* at 328–29).

## D. *Sentencing*

On November 14, 2001, Justice Visitacion–Lewis sentenced James. At the outset of the proceeding, James admitted that he was convicted of a prior violent felony in 1991. (S. at 3–4)[2]. Based on that conviction, several other convictions for weapons possession and assault, and James' unwillingness to accept responsibility for the attempted purse snatching, the Justice imposed concurrent determinate seven-year terms of imprisonment on the assault and attempted robbery charges. (S. at 7–9).

## E. *Subsequent Procedural History*

On appeal, James argued that the evidence was legally insufficient to prove beyond a reasonable doubt that Carroll suffered a "physical injury" within the meaning of the Penal Law. In support of this argument, he alleged that the People had merely established that she had stiffness in her neck for one week. (*See* Martland Decl. Ex. A (James Br. on Appeal) at 2). James also noted that Carroll did not miss work or seek medical treatment. (*Id.*).

On March 13, 2003, the New York Supreme Court, Appellate Division, First Department, unanimously affirmed James' conviction, stating that

[t]he evidence was legally sufficient to prove the element of physical injury.... The victim suffered a sore left shoulder and hip for a week as the result of falling on her left side when defendant

knocked her to the ground and pummeled her upper body. She also suffered considerable and prolonged soreness, swelling and stiffness of the right side of her face, jaw, and neck as the result of being punched several times. We have considered and rejected defendant's remaining arguments.

*People v. James,* 303 A.D.2d 240, 757 N.Y.S.2d 6, 7 (1st Dep't 2003) (internal citations omitted).

By letter dated March 18, 2003, supplemented by a letter to Judge Richard C. Wesley dated March 27, 2003, James sought leave to appeal to the New York Court of Appeals on the ground that there was insufficient evidence that Carroll had sustained a physical injury. (Martland Decl. Ex. D). That application was denied on May 16, 2003. (*Id.* Ex. F).

James' *pro se* petition is dated May 7, 2004, and was timely received by the *Pro Se* Office of this Court on May 12, 2004. (*See* Pet. at 1). In his petition, James presses his prior claim regarding the alleged insufficiency of evidence to establish beyond a reasonable doubt the physical injury element of the attempted robbery and assault charges against him. (*See id.* ¶ 12; SF at 3). In addition, James claims that he did not attempt to rob or assault Carroll. (SF at 1).

## III. *Discussion*

### A. *Standard of Review*

A habeas corpus petition is not a vehicle to relitigate every issue previously determined in state court. *Herrera v. Collins,* 506 U.S. 390, 401, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). Instead, a state prisoner seeking habeas relief under Section 2254 must show by a preponderance of the

---

**2.** At that time and in connection with several other prior arrests, James used the alias "Robert Lindsay Caldwell, Jr." (*See* S. at 4–5).

evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petitioner thus has the burden of proving, by a preponderance of the evidence, that his rights have been violated. *Jones v. Vacco,* 126 F.3d 408, 415 (2d Cir.1997).

Section 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides, in part, that:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was *contrary to,* or involved an *unreasonable application of,* clearly established Federal law, as determined by the Supreme Court of the United States.

28 U.S.C. § 2254(d) (emphasis added).

The Supreme Court has "construed the amended statute so as to give independent meaning to the terms 'contrary [to]' and 'unreasonable.'" *Jones v. Stinson,* 229 F.3d 112, 119 (2d Cir.2000). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Under the "unreasonable application" clause, a federal habeas court should "ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409, 120 S.Ct. 1495. This standard does not require that reasonable jurists would all agree that the state court was wrong. *Id.* at 409–10, 120

S.Ct. 1495. Rather, the standard "falls somewhere between 'merely erroneous and unreasonable to all reasonable jurists.'" *Stinson,* 229 F.3d at 119 (quoting *Francis S. v. Stone,* 221 F.3d 100, 109 (2d Cir. 2000)). Section 2254(d)(1) only applies, however, "with respect to claims adjudicated on the merits in state court." *Williams,* 529 U.S. at 412, 120 S.Ct. 1495.

Section 2254(d)(2) further authorizes the federal courts to grant a habeas writ when a claim considered on the merits in state court "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). To the extent that a habeas petition challenges factual findings, Section 2254(e)(1) provides that "a determination of a factual issue made by a State court shall be presumed to be correct" and that "[t]he [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

"If, after carefully weighing all the reasons for accepting a state court's judgment, a federal court is convinced that a prisoner's custody ... violates the Constitution, that independent judgment should prevail." *Williams,* 529 U.S. at 389, 120 S.Ct. 1495.

### B. *Sufficiency of Evidence*

James' first claim is that "[t]he [e]vidence was legally insufficient to prove [b]eyond a reasonable doubt that the complainant suffered physical injury where the people established that she had stiffness in her neck for one week, and she did not miss work or seek medical treatment." (SF at 3).

A federal court reviewing the sufficiency of the evidence underlying a state court criminal conviction must "determine whether the record evidence could reason-

ably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). To prevail, the petitioner must show that *no* rational trier of fact could have found proof of guilt beyond a reasonable doubt. *Einaugler v. Sup.Ct. of the State of N.Y.*, 109 F.3d 836, 839 (2d Cir.1997); *Bossett v. Walker*, 41 F.3d 825, 830 (2d Cir.1994) (quoting *Jackson*, 443 U.S. at 324, 99 S.Ct. 2781). Moreover, in determining whether this standard has been met, a habeas court must view the evidence in the light most favorable to the prosecution and draw all permissible inferences in its favor. *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781. A petitioner challenging the sufficiency of the evidence therefore bears a "very heavy burden." *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir.2002).

In determining the sufficiency of the evidence underlying a state court conviction, a federal court "must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir.1999); *see Jackson*, 443 U.S. at 324 n. 16, 99 S.Ct. 2781; *DiGuglielmo v. Smith*, 366 F.3d 130, 137 (2d Cir.2004). In this case, the state law at issue is the New York Penal Law. Under Section 160.10(2)(a) of the Penal Law, to be guilty of Robbery in the Second Degree, James must have caused "physical injury to any person who is not a participant in the crime" during the commission of the crime. N.Y. Penal Law § 160.10(2)(a) (McKinney 2005). Under Section 120.05(6) of the Penal Law, to be guilty of Assault in the Second Degree, James, in the course of committing or attempting to commit a felony, must have caused "physical injury to a person other than one of the participants." *Id.* § 120.05(6) (McKinney 2003). "Physical injury," in turn, is defined under New York law as the impairment of a physical

condition *or* substantial pain. *See id.* § 10.00(9) (McKinney 2003).

■■■ James claims that the People failed to establish beyond a reasonable doubt that he caused Carroll substantial pain or impaired her physical condition. (*See* Pet. ¶¶ 9, 12; SF at 3). He further contends that, in the absence of evidence to prove these required alternative elements of both crimes, there was no basis for the jury to find him guilty of second degree robbery and assault.

In support of this insufficiency claim, James cites a series of Second Department cases which can be read to require injuries more substantial than those sustained by Carroll to meet the statutory "physical injury" threshold. (*See* James Br. on Appeal at 8–9) (citing, *e.g.*, *People v. Barnes*, 261 A.D.2d 409, 410, 690 N.Y.S.2d 70 (2d Dep't 1999)) (victim's inability to work for three weeks after defendant bit and twisted her arm not sufficient to establish physical injury); *People v. DiStefano*, 252 A.D.2d 530, 530–31, 677 N.Y.S.2d 578 (2d Dep't 1998) (physical injury not established although victim's face was badly "braised" (*i.e.*, scratched), but not bleeding, and his collar bone was sore for a while); *People v. Sanders*, 245 A.D.2d 471, 472, 666 N.Y.S.2d 663 (2d Dep't 1997) (physical injury not established where witnesses testified that victim's palm was cut with a razor and bleeding, but he sought no medical attention). However, as its decision in this case indicates, the First Department clearly takes a different view. *See, e.g., People v. Smith*, 283 A.D.2d 208, 208, 726 N.Y.S.2d 12 (1st Dep't 2001) (physical injury established by "evidence that defendant punched the victim on the side of the head . . . , causing a bump and a bruise with resulting soreness, as well as pain when eating for approximately a week"); *People v. Pope*, 174 A.D.2d 319,

320, 571 N.Y.S.2d 205 (1st Dep't 1991) (upholding conviction where victim testified that one day after the robbery "his left little finger was 'very, very sore', he could move the finger only 'painfully', [and] the next morning it was 'throbbing' and he probably took an 'aspirin' ").

■ Here, James has not made a clear and convincing showing sufficient to overcome the presumption of correctness that attaches to the First Department's determination that Carroll sustained a "physical injury." Moreover, it does not matter whether the First or Second Department cases correctly reflect the applicable state rules. Instead, on habeas review, the jury's verdict must be permitted to stand "[a]s long as any competent evidence went to the fact-finders from which they could infer guilt beyond a reasonable doubt." *See Reid v. Miller*, No. 02 Civ. 2895(LTS)(MDF), 2003 WL 22383097, at *6 (S.D.N.Y. Oct. 20, 2003) (quoting *Martin v. Scully*, 748 F.Supp. 159, 164 (S.D.N.Y.1990)). For example, in *Reid*, Judge Swain rejected a habeas petitioner's claim that a physical injury was not established where the victim failed to seek medical attention and walked up four flights of stairs following the incident, noting that she had fingermarks on her neck and that her face remained "kind of swollen" three days after the incident. 2003 WL 22383097, at *6. As the court observed, "[w]hile [the victim's] injuries were not severe enough to require medical attention, a rational trier of fact could have believed there was sufficient evidence to prove beyond a reasonable doubt that [she] suffered physical injury." *Id.*

Similarly, in *Valtin v. Hollins*, 248 F.Supp.2d 311, 315–16 (S.D.N.Y.2003), the court found the evidence sufficient to prove the physical injury element of a second degree robbery charge where the victim sustained a "cut lower lip which bled and became swollen, had severe aches and pain in his head, felt nauseous and was significantly dizzy."

■ The prosecution need not have proved that Carroll was physically impaired to establish the physical injury element of the crimes charged. Under Section 10.00(9) of the Penal Law, it is enough that she endured "substantial pain." In that regard, Carroll testified that her neck was stiff and her jaw was sore for approximately one week. (Tr. at 219). This alone would have permitted a rational juror to find this element of the crimes proved. *See Smith v. Duncan*, No. 03 Civ. 910(DLC), 2004 WL 1857570, at*5 (S.D.N.Y. Aug. 18, 2004) (physical injury established where victim suffered a bump and bruise to his head that "resulted in a week of pain and caused him difficulty chewing").

■ Finally, under both alternative definitions of "physical injury," it plainly was not necessary that Carroll have obtained medical attention. *See, e.g., Williams v. Walsh*, No. 02 Civ. 7633(HB), 2004 WL 2754859, at *6 (S.D.N.Y. Dec.1, 2004) ("That the victim did not seek any medical attention after the incident ... is not dispositive of the matter. Lack of medical treatment does not mean a person did not sustain a 'physical injury.' "); *Rivera v. Bruce*, No. 03 Civ. 2596(PKC)(GWG), 2004 WL 1276711, at *8 (S.D.N.Y. June 10, 2004) ("That [the victim] did not seek medical attention is not ... dispositive under New York law.").

For these reasons, there is no merit to James' claim that the People failed to establish the requisite "physical injury."

## C. *Actual Innocence*

James' only other claim is that he did not attempt to rob or assault Carroll. In a sworn statement attached to his petition,

James contends that he was walking on the street early in the morning on the date of his arrest, because he was unable to sleep as the result of injuries to his side and shoulder that he sustained when he fell down some subway stairs a few days earlier. (*See* SF at 1). According to James, while he was on 138th Street, Carroll crossed in front of him, so he "put his hand on [her] arm to stop her from bumping into [his] side or shoulder." (*Id.*). James alleges that Carroll then started "fling[ing] her arm back and forth while yelling loud," and that "[t]he only way that [he] could keep from getting hit on his shoulder or side was to fend the complainant off." (*Id.*). He concedes that Carroll fell to the ground, but states that he "did not hit her" and "just walked away." (*Id.*). James further claims that he could not have assaulted Carroll because it was impossible for him to move his left arm in an "upward" or "pulling" direction due to his injury. *Id.* In an effort to buttress this claim, James has attached to his petition a medical report addressed to Prison Health Services, Inc., at Rikers Island. (Ex. 1). That report, dated nearly one month after James' arrest, sets forth a radiologist's impression that James had "tendinitis and/or bursitis" of the left shoulder. (*Id.*).

James never presented any evidence concerning his alleged injuries during the course of his trial. He also did not incorporate his argument that his injuries precluded commission of the crimes charged into his brief before the Appellate Division or his application for leave to appeal to the New York Court of Appeals. Indeed, in his second letter in support of James' application for leave to appeal, James' attorney, Robert S. Dean, Esq. of the Center for Appellate Litigation, clearly stated that "[t]he sole issue raised ... is whether there was sufficient evidence to establish that the robbery/assault complainant suffered 'physical injury.'" (Ex. D at 2).

■ Under 28 U.S.C. § 2254(b), habeas petitioners must exhaust all of the remedies available in state court before this Court can consider their claim. *See* 28 U.S.C. § 2254(b)(1). For a claim to be fully exhausted, it must be presented to the highest court of the state. *Pesina v. Johnson*, 913 F.2d 53, 54 (2d Cir.1990). A petition is not deemed exhausted if the petitioner "has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

■ A federal court presented with unexhausted claims in a habeas petition may, in appropriate circumstances, either stay the petition or dismiss it without prejudice, so that the petitioner can return to state court to pursue exhaustion. *See Rhines v. Weber*, — U.S. ——, 125 S.Ct. 1528, 1534, 161 L.Ed.2d 440 (2005); *Duncan v. Walker*, 533 U.S. 167, 182–83, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) (Souter, J., concurring); *Zarvela v. Artuz*, 254 F.3d 374, 380–81 (2d Cir.2001) (discussing procedures applicable to "mixed" petitions containing both exhausted and unexhausted claims). Here, however, because James had only thirty days from the date of his sentencing in which to file an appeal as of right, any attempt to file a second direct appeal would be untimely. *See* N.Y.Crim. Proc. Law § 460.10(1)(a) (McKinney 2005). Moreover, James cannot seek collateral review of his actual innocence claim because a defendant who has prosecuted a direct appeal may not subsequently seek collateral review of an issue that could have been raised on appeal but was not. *See* N.Y.Crim. Proc. Law § 440.10(2)(c) (McKinney 1994); *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir.1994).

Accordingly, because the state court would consider James' new claim procedurally barred, this Court must treat that

claim as "procedurally defaulted." *See Aparicio v. Artuz,* 269 F.3d 78, 89–90 (2d Cir.2001) (quoting *Coleman v. Thompson,* 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)). Federal habeas review therefore is barred unless James can demonstrate *both* cause for the default *and* actual prejudice, *or* demonstrate that the failure to consider his claim will result in a fundamental miscarriage of justice. *Coleman,* 501 U.S. at 750, 111 S.Ct. 2546.

 To establish cause for a default, a petitioner must adduce "some objective factor external to the defense" which explains why he did not raise the claim previously. *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Gonzalez v. Sullivan,* 934 F.2d 419, 422 (2d Cir.1991) (quoting *Murray* ). The circumstances giving rise to cause include (1) interference by government officials which makes compliance impracticable, (2) situations in which the factual or legal basis for a claim was not reasonably known by counsel; and (3) ineffective assistance of counsel. *See Murray,* 477 U.S. at 488, 106 S.Ct. 2639; *Bossett,* 41 F.3d at 829 (quoting *Murray* ). A showing of prejudice requires a petitioner to demonstrate that the failure to raise the claim previously had a substantial injurious effect on the petitioner's case such that he was denied fundamental fairness. *Reyes v. New York,* No. 99 Civ. 3628(SAS), 1999 WL 1059961, at *2 (S.D.N.Y. Nov.22, 1999). Finally, to establish a fundamental miscarriage of justice, a petitioner must demonstrate that he is "actually innocent." *Aparicio,* 269 F.3d at 90.

Here, James' petition is utterly silent as to any circumstances which might constitute cause for his default. Accordingly, there is no need to consider whether he was prejudiced.

 Turning to the second branch of the exception, James alleges that it was physically impossible for him to have committed the assault, and that he therefore is "actually innocent." The Supreme Court has announced two different tests to determine whether a habeas petitioner can establish that he is actually innocent. When actual innocence is not the substantive claim, but merely a threshold through which the petitioner must pass to overcome his procedural default, the underlying conviction is not "entitled to the same degree of respect as one ... that is the product of an error free trial." *Schlup v. Delo,* 513 U.S. 298, 316, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). Accordingly, to overcome a procedural bar, the petitioner need only show that a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *See Murray,* 477 U.S. at 496, 106 S.Ct. 2639; *Schlup,* 513 U.S. at 326–27, 115 S.Ct. 851 (applying *Murray* standard). In contrast, where the claim of actual innocence would be pressed even if the trial were error free, it is appropriate to apply an "extraordinarily high" standard of review. *Schlup,* 513 U.S. at 315–16, 115 S.Ct. 851 (quoting *Herrera v. Collins,* 506 U.S. 390, 426, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993)). In such circumstances, the petitioner must show that "no rational trier of fact *could* [find] proof of guilt beyond reasonable doubt." *Herrera,* 506 U.S. at 421, 113 S.Ct. 853 (O'Connor, J., concurring) (quoting *Jackson v. Virginia,* 443 U.S. 307, 314, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis added)); *see also Sawyer v. Whitley,* 505 U.S. 333, 350, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992) (requiring clear and convincing evidence that "no rational juror *would* find" petitioner eligible for the death penalty) (emphasis added).

 In this proceeding, although James raises two claims, his only procedurally defaulted claim is that he is actually innocent. Since this is a substantive claim, James bears the burden of showing

that *no* rational juror would or could have concluded that he was guilty.

The proof that James proffers falls woefully short of this mark. At the outset, the medical report that James relies upon is dated about one month after his arrest and does not state that James was physically unable to move his shoulder or arm on the date of his encounter with Carroll. (*See* Ex. 1). Moreover, even if James had testified in his own defense—an unlikely prospect in view of his prior record and use of aliases—his self-serving story would have been far from convincing in light of Carroll's eyewitness testimony and the threats that Grant testified James made in an effort to avoid capture. Accordingly, even if James' claim were merely subject to the *Murray* standard, his actual innocence claim would fail.

### IV. *Conclusion*

For the foregoing reasons, James' habeas petition should be denied.

### V. *Notice of Procedure for Filing Objections to this Report and Recommendation*

The parties shall have ten (10) days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed.R.Civ.P. 6(a) and (e). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of Honorable George B. Daniels at the United States Courthouse, 40 Centre Street, New York, New York 10007, to my chambers at the United States Courthouse, 500 Pearl Street, New York, N.Y. 10007, and to any opposing parties. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72(b). Any requests for an extension of time for filing objections must be directed to Judge Daniels. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72(b).