**Buckley Andre BRUNER,
Petitioner–Appellant,**

v.

**E.P. PERINI, Supt.,
Respondent–Appellee.**

Nos. 87–3931, 87–3944.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 8, 1988.

Decided May 12, 1989.

Buckley Andre Bruner, Lebanon, Ohio, pro se.

Donald N. Krosin (argued), Deputy Federal Public Defender, Cleveland, Ohio, for petitioner-appellant.

Beverly Yale Pfeiffer, Asst. Atty. Gen., Donald G. Keyser (argued), Columbus, Ohio, for respondent-appellee.

Before KEITH and NELSON, Circuit Judges, and DUGGAN,* District Judge.

---

* The Honorable Patrick J. Duggan, United States District Judge for the Eastern District of Michi-

DUGGAN, District Judge.

Petitioner-appellant, Buckley Bruner, appeals the district court's denial of his petition for a writ of habeas corpus.

Bruner was indicted in January, 1983 by a Hamilton County grand jury, in the State of Ohio, on one count of robbery. Bruner's trial began on December 13, 1983. During jury selection, Bruner's state court counsel objected to the composition of the jury *venire*, and asserted that Bruner was being deprived of his right to a fair trial, because the *venire* was not representative of the community. In particular, Bruner's counsel objected to the fact that there was only one black juror on the *venire* panel. Subsequently, the state peremptorily challenged the sole black juror on the panel. Bruner's counsel noted, on the record, that the excused juror was black, and that there were no other black jurors on the *venire* panel. On this basis, Bruner's counsel moved for a mistrial after the jury was impaneled. The trial court denied the motion.

The only evidence presented at trial linking Bruner to the crime was the identification of petitioner as the robber by the victim, Connie Arnold. The jury convicted Bruner of robbery.

After exhausting his state court remedies, Bruner filed a petition for writ of habeas corpus under 28 U.S.C. § 2254, in the U.S. District Court for the Northern District of Ohio.

The district court denied the petition, holding that defense counsel did not timely move for a mistrial or cause the necessary record to be made on the jury issue, and that petitioner had demonstrated no prejudice resulting from his trial counsel's failure to move for suppression of the identification testimony. We affirm the district court's decision denying the petition for writ of habeas corpus.

## I. *Composition of the Jury*

■ Bruner initially contends that the prosecutor's elimination of the sole black juror in the jury panel denied plaintiff his constitutional rights guaranteed by the sixth amendment to the U.S. Constitution, to an impartial jury and to a jury which represented a cross-section of his peers.[1] Bruner relies on this Court's decision in *Booker v. Jabe,* 775 F.2d 762 (6th Cir.1985), *vacated* 478 U.S. 1001, 106 S.Ct. 3289, 92 L.Ed.2d 705, *reinstated on remand,* 801 F.2d 871 (6th Cir.1986), *cert. denied,* 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987). In *Booker,* this Court held that the systematic exclusion of members of a cognizable group from a petit jury panel, based on the potential jurors' group affiliation, violates a party's sixth amendment right to an impartial jury.

The *Booker* court stated that a party establishes a *prima facie* case of a sixth amendment violation when he or she demonstrates that: (1) the group alleged to be excluded is a cognizable group in the community, and (2) there is a substantial likelihood that the peremptory challenges which resulted in the exclusion were made on the basis of the individual *venire* persons' group affiliation, rather than because of any indication of a possible inability to de-

---

gan, sitting by designation.

**1.** Petitioner concedes that *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) does not apply to the present case. (*See* Brief of plaintiff-appellant at page 12). In *Batson,* the U.S. Supreme Court held that a prosecutor's privilege to strike individual jurors through peremptory challenges is subject to the restrictions of the equal protection clause of the fourteenth amendment to the U.S. Constitution. *Batson* at 89, 106 S.Ct. at 1718. The Court further held that the equal protection clause forbids the prosecutor from challenging potential jurors solely on account of their race, or because the prosecutor believes that they will be unable to consid-

er the state's case against a black defendant impartially. *Batson* at 89, 106 S.Ct. at 1719. In addition, the court stated that the standards adopted in *Batson* were designed to ensure that a state does not strike "*any* black juror because of his race." *Batson* at 99, 106 S.Ct. at 1724 n. 22 (emphasis added.) In *Allen v. Hardy,* 478 U.S. 255, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986), the Supreme Court held that the *Batson* decision did not apply retroactively on collateral review of decisions that became final before the *Batson* opinion was announced, on April 30, 1986. In the present case, the Supreme Court of Ohio affirmed the petitioner's conviction on January 16, 1985.

cide the case on the basis of the evidence presented. *Booker* at 773. Further, the *Booker* court stated, it is only when the moving party establishes a *prima facie* showing of systematic abuse of peremptory challenges (which the trial court must find on the record), that the burden shifts to the nonmoving party to respond to any inquiry regarding its exercise of that right. *Id.*

It is necessary, in the present case, to focus on the meaning of "systematic" exclusion as used by the *Booker* court. The *Booker* court was bound by the Supreme Court's decision in *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), the precursor to *Batson*. In *Swain*, the petitioner had appealed his state conviction on rape charges to the United States Supreme Court, alleging that the prosecutor's removal of six black petit jurors, by peremptory challenge, violated the petitioner's fourteenth amendment right to equal protection of the laws. The Court refused to reverse the petitioner's conviction, holding that the striking of black jurors in a particular case was not a violation of the equal protection clause. The Court held that a presumption existed, in every case, that the prosecutor was using the State's challenges to obtain a fair and impartial jury, and that this presumption was not overcome by allegations that all blacks were removed from the jury, or that they were removed because they were black. The Court went on to hold that a prosecutor's consistent and systematic removal of blacks by peremptory challenges, to prevent any and all blacks from serving as jurors in any criminal cases within the county, could constitute a violation of the fourteenth amendment. Numerous cases, including *Booker*, criticized the *Swain* decision. *See Booker* at 766.

The *Booker* court held that the *Swain* decision did not immunize the use of peremptory challenges in each individual case, regardless of the constitutional provision sought to be enforced. *Booker* at 767. The use of peremptory challenges in an individual case was reviewable under the sixth amendment, despite *Swain*. The *Booker* court held that substantive limitations on judicial inquiry into abuse of the peremptory challenge did exist, however, under Swain. Specifically, the *Booker* court held that peremptory challenges could not be scrutinized *individually* for reasonableness or sincerity. *Booker* at 771. The court noted that individual scrutiny of a peremptory challenge would destroy the peremptory challenge's usefulness as a tool that could be exercised on the basis of an "inarticulate suspicion" that a juror is partial, or for no reason at all, and thus supplement challenges for cause. The court went on to state that the systematic exclusion of members of a distinct group from the jury would rarely be the result of "no reason."

We believe that the "systematic" exclusion of a distinct group of jurors by peremptory challenges, as defined in *Booker*, contemplates the repeated use of multiple peremptory challenges to exclude members of the group. The use of a single peremptory challenge to exclude a single member of a distinct group from the petit jury is not "systematic" exclusion under the holdings in *Booker* and *Swain*, even though the excluded juror is the sole representative of the group on the venire panel. *Booker* and *Swain* were explicit in their command that peremptory challenges must not be examined individually, and that the moving party must establish a systematic exclusion of *members* of the distinct group, in order to overcome the presumption that the nonmoving party is exercising his or her peremptory challenges in a nondiscriminatory manner.

The Court acknowledges that the *Booker–Swain* definition of "systematic" exclusion is not applicable to future cases, in light of *Batson*.[2] Nevertheless, however abhorrent the practice of striking jurors because of their race, the holding in *Batson* does not apply to the instant case. (See footnote 1, *supra*.) This case is controlled by the parameters of *Booker* and

---

**2.** The Supreme Court indicated, in *Batson*, that a constitutional violation occurs whenever any black juror is struck because of his or her race.

*Batson,* 476 U.S. at 99 n. 22, 106 S.Ct. at 1724 n. 22.

*Swain,* pursuant to which an individual peremptory challenge is not subject to scrutiny.

Further, we find that the result in the present case is consistent with the Supreme Court's most recent pronouncement on the retroactivity of new constitutional rules, in *Teague v. Lane,* —— U.S. ——, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion by Justice O'Connor, with Chief Justice Rehnquist, Justice Scalia, and Justice Kennedy joining in the opinion, and Justices Stevens and Blackmun concurring in the judgment.) *Teague* involved the appeal of a district court's denial of a writ of habeas corpus. The petitioner challenged his conviction on the ground that the prosecutor had used all ten of his peremptory challenges to exclude blacks from the jury. An all-white jury convicted the petitioner. The petitioner argued that both the equal protection clause of the fourteenth amendment, and the fair cross-section requirement of the sixth amendment prohibited the exclusion of petit jurors on the basis of race. The Court rejected the petitioner's equal protection claim, based on *Allen v. Hardy,* because petitioner's conviction became final before *Batson* was decided. The Court declined to rule on the merits of petitioner's sixth amendment claim, holding that a decision extending, to the petit jury, the sixth amendment requirement that the jury· *venire* be drawn from a fair cross section of the community, would not be retroactively applicable to cases on collateral review. A plurality of the Court adopted the rule that, unless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced. *Teague,* at ——, 109 S.Ct. at 1075. The Court further held that applica-

tion of the fair cross section requirement to the petit jury would be a new rule,[3] which did not fall within an exception,[4] and thus would not be retroactively applicable to cases on collateral review. *Teague,* at —— ——, 109 S.Ct. at 1075–77.

In the present case, the petitioner seeks a writ of habeas corpus based on the holding in *Booker* that the sixth amendment right to an impartial jury, drawn from a cross section of the community, precludes a prosecutor from systematically excluding potential jurors solely because of their race. Like *Teague,* the *Booker* decision established a new rule of law, which does not fall into any of the exceptions to non-retroactivity. *Id.* Petitioner's conviction became final on January 16, 1985, when the Supreme Court of Ohio affirmed the petitioner's conviction; *Booker* was decided in October, 1985, nine months after petitioner's conviction became final. Accordingly, the rule established by this court in *Booker* is not applicable to the instant case, which became final before the new rule was announced. The writ of habeas corpus cannot be granted on this basis.

## II.  *The Identification Testimony*

Bruner's second argument on appeal is that he was denied due process of law, in violation of the fourteenth amendment, by the admission of Ms. Arnold's in-court identification of Bruner as the robber. Bruner contends that the police officers' exhibition of Bruner to Ms. Arnold at the bakery where Ms. Arnold worked, shortly after the robbery, tainted Ms. Arnold's identification testimony. Additionally, Bruner contends that his attorney's failure to object to the admission of the identification testimony until immediately before the close of the State's case, constituted ineffective assistance of counsel.

---

**3.** The Court defined a new rule as one which "breaks new ground or imposes a new obligation on the States or the Federal Government." *Teague,* at ——, 109 S.Ct. at 1070. A case establishes a new rule if the result was not mandated by precedent existing at the time the defendant's conviction became final.

**4.** The Court discussed two exceptions to the general rule of non-retroactivity. First, a new

rule should be applied retroactively if it "places 'certain kinds of primary, private individual conduct beyond the power of the criminal lawmaking authority to proscribe.'" Second, a new rule should be applied retroactively if it necessitates the observance of "those procedures that ... are 'implicit in the concept of an ordered liberty.'" *Teague,* at ——, 109 S.Ct. at 1073.

## A. Due Process

 The United States Supreme Court summarized the standard for the admission of identification testimony tainted by a previous confrontation between the witness and the suspect, in *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). The *Manson* court held that reliability is the key criterion in judging the admissibility of such evidence. *Manson* at 114, 97 S.Ct. at 2253. The factors to be considered in determining whether the identification testimony is sufficiently reliable include the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of his or her prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. *Manson* at 114, 97 S.Ct. at 2253. The corrupting effect of the confrontation is weighed against these factors. *Id.*

After evaluating the standard delineated in *Manson*, the court concludes that Ms. Arnold's in-court identification was sufficiently reliable for admission, and that no due process violation occurred. Ms. Arnold had a close, face-to-face encounter with the robber. Her attention was focused (she was the victim of the robbery), and she gave a reasonably accurate description of the robber to the police. Further, she showed no uncertainty in identifying Bruner as the robber, when confronted with him at the bakery. In addition, the confrontation took place only about thirty minutes after the robbery. Weighing these factors against the suggestiveness of the confrontation, the court is satisfied that Ms. Arnold's testimony was properly admitted.

## B. Ineffective Assistance of Counsel

 Bruner's ineffective assistance of counsel claim is based on his attorney's failure to object to the admission of Ms. Arnold's testimony until the close of the State's presentation of its case. In light of the Court's determination that the evidence was properly admitted, Bruner's ineffective assistance of counsel claim must fail. To prevail on an ineffective assistance of counsel claim, a convicted defendant must demonstrate (1) that counsel's errors were so serious that counsel was not functioning as counsel guaranteed by the sixth amendment, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 688–96, 104 S.Ct. 2052, 2065–69, 80 L.Ed.2d 674 (1984). Bruner cannot demonstrate that the result of the instant case would have been different, but for his attorney's failure to object to the admission of the identification testimony until the close of the State's case. Accordingly, Bruner's claim is without merit.

The district court's denial of the petition for writ of habeas corpus is AFFIRMED.