NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0117n.06

No. 11-5432

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
***Jan 31, 2013***
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| MARC S. CRAIG, | ) | |
| | ) | ON APPEAL FROM THE |
| Petitioner-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| UNITED STATES OF AMERICA, | ) | **O P I N I O N** |
| | ) | |
| Respondent-Appellee. | ) | |

BEFORE:    COLE and GRIFFIN, Circuit Judges, and GWIN, District Judge.[*]

COLE, Circuit Judge.  Marc Craig appeals the district court's dismissal of his 28 U.S.C. § 2255 motion to vacate his sentence.  Craig argues that the district court abused its discretion in declining to hold an evidentiary hearing on the issue of ineffective assistance of counsel.  We AFFIRM.

**I.**

On November 16, 2004, Craig was indicted on a charge of bank robbery, in violation of 18 U.S.C. § 2113(a).  A day later, he pled not guilty.  On February 14, 2005, the United States gave notice, pursuant to 18 U.S.C. § 3559(c)(4), of its intent to seek increased punishment due to Craig's prior serious felony convictions.  Under a "mandatory life imprisonment" provision, a person previously convicted of "2 or more serious violent felonies" shall be sentenced to life imprisonment

---

[*]The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

when convicted of another "serious violent felony." *See* 18 U.S.C. § 3559(c)(1)(A)(i). Prior to his

2004 indictment, Craig had been convicted of three counts of bank robbery in 1992 and one count

of bank robbery in 1998, all in violation of 18 U.S.C. § 2113. It is undisputed that these prior

convictions met the statutory requirement of "2 or more serious violent felonies," because on appeal,

Craig appears to disavow one of his original § 2255 claims: that his attorney misled him to believe

that his prior convictions did not count as predicates for the purposes of § 3559(c)(1)(A)(i) because

no guns were used. Craig agreed to plead guilty to the 2004 indictment. A plea agreement and an

accompanying Agreed Factual Basis were entered on March 24, 2005.

Craig and the government differed at times as to whether Craig had threatened the use of a

gun during the robbery. A finding that Craig made such a threat would require the district court to

apply the § 3559 mandatory life sentence. The Agreed Factual Basis stated: "The government's

proof would show that Craig . . . told the teller, Tabitha Michelle Ricker, 'this is a robbery,' [and]

'I have a gun,'" before he requested money. At a "change of plea" hearing on April 11, 2005, Craig

acknowledged that he "took money from . . . Ricker . . . through the use of force, violence or by

intimidation," and told Ricker, "this is a robbery." At the same hearing, Craig denied saying

"anything about a gun." Regarding the dispute, the Assistant United States Attorney said:

> [I]f that's a fight we need to save for another day, I think the court can still take the
> plea this morning; and even under [§] 3553(c)[1] because [§] 2113 is an enumerated
> statute under that enhancing provision and that it's the defendant's burden to prove
> that there wasn't a threat and the use of a gun . . . .

---

[1]Given the context, the court must have meant § 3559(c).

The district court apparently accepted this interpretation. The court advised Craig that he faced a maximum penalty of life imprisonment, and asked if Craig "underst[ood] that this statute provides under certain circumstances for a mandatory sentence of life imprisonment." Craig answered, "Yes." The court asked if Craig "underst[ood] that [the court] could in fact impose a sentence of life imprisonment," and Craig responded, "Yes."

Craig's guilty plea was entered on April 12, 2005, and a mutually agreed-upon amendment to the plea agreement was filed on April 25, 2005.

The Presentence Investigation Report noted repeatedly that Craig's guilty plea would subject him to life imprisonment. To avoid mandatory life imprisonment, Craig would have to prove by clear and convincing evidence that the instant offense did not qualify as a "serious violent felony." Craig "objected to the finding that the maximum term of imprisonment is life" because he "did not tell the teller he had a gun nor did he make any gestures so the teller would assume he had a gun," and therefore his most recent offense was not a "serious violent felony" under the statutory scheme. The district court overruled Craig's objection after an evidentiary hearing, in which it found Craig failed to prove by clear and convincing evidence that he did not threaten use of a gun. The district court sentenced Craig to life imprisonment on August 16, 2005. Craig appealed on evidentiary grounds and this Court affirmed his conviction. *United States v. Craig*, 198 F. App'x 459 (6th Cir. 2006), *cert. denied* 127 S. Ct. 1309 (2007).

On February 14, 2008, Craig filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255, arguing that, among other things, he was denied the effective assistance of trial counsel. He contended that, because of the ineffective assistance, his guilty plea was not made knowingly,

intelligently, and voluntarily. The district court denied and dismissed Craig's motion, finding it unnecessary to hold an evidentiary hearing on Craig's ineffective assistance claim because it was "contradicted by the record." However, the district court granted a certificate of appealability as to whether it should have granted an evidentiary hearing, characterizing its holding as "at least arguably debatable." Craig appeals.

## II.

We review the district court's refusal to conduct an evidentiary hearing for an abuse of discretion. *See Campbell v. United States*, 686 F.3d 353, 357 (6th Cir. 2012). When factual disputes arise during a § 2255 motion, *see Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)*,* the district court must conduct an evidentiary hearing "unless the record conclusively shows that the petitioner is entitled to no relief." *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (internal quotation marks omitted).

To demonstrate ineffective assistance, Craig had to show that (1) "his lawyer's performance was deficient as compared to an objective standard of reasonable performance," *id.* (citing *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984)), and (2) "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial," *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Craig did *not* have to show that he would have received a more favorable outcome if he had gone to trial. *See Griffin v. United States*, 330 F.3d 733, 737 n.1 (6th Cir. 2003). In his pro se § 2255 motion, Craig claimed that his trial attorney "misle[d] [him] into thinking that he could somehow avoid a life sentence by signing the plea agreement," and that Craig would otherwise have gone to trial. The district court acknowledged that Craig's claim "would

seem to require an evidentiary hearing to resolve the factual dispute concerning the actual advice given to Craig by his counsel."

Despite Craig's allegations, however, the district court declined to order an evidentiary hearing to determine the content of the "actual advice," because the claim was "contradicted by the record" and therefore "[could] not be accepted as true." The district court's analysis focused almost entirely on the failure of a crucial premise of Craig's ineffective assistance claim: his alleged lack of awareness of the fact that mandatory life imprisonment was a "likely" sentence. The court catalogued instances in the record where the district court, Craig's attorney, or Craig himself acknowledged the applicability of the mandatory life sentence provision and concluded:

> All of this makes it compellingly clear that Craig's assertions that his counsel gave him erroneous advice [are] not true and makes his assertions that he would not have entered into a plea agreement or entered a guilty plea if he had been aware that the provisions of § 3559(c) would apply if the offense involved the threat of the use of a firearm simply incredible.

On appeal, Craig argues a hearing is required because (1) the record is "far from conclusive" as to whether Craig's attorney advised him that "he *would not* receive a life sentence pursuant to 18 U.S.C. § 3559 if he pleaded guilty" (emphasis added); (2) there is a factual dispute regarding Craig's "understanding of his sentencing exposure"; and (3) there is a disparity between the life sentence Craig received and the sentences he could have received if he had gone to trial. Additionally, Craig argues that the district court failed to construe his claims liberally, as is required when a defendant files pro se. Craig's first two arguments are essentially the same: either the record "conclusively shows" that Craig's claim was implausible (in which case there is no plausible factual dispute) or it does not (in which case Craig is entitled to a hearing). *See Valentine v. United States*, 488 F.3d

325, 334 (6th Cir. 2007) (finding that the burden is met when the petitioner "offers more than a mere assertion . . . he presents a factual narrative of the events that is neither contradicted by the record nor 'inherently incredible'").

Because Craig frames the factual dispute as "whether he believed that he *would not* receive a life sentence by pleading guilty," (emphasis added) we find that the district court did not abuse its discretion when it found the record to conclusively show that Craig could not have held this belief, and therefore would not be entitled to relief on his ineffective assistance claim. Even Craig's discussion of the record makes clear that he was aware that he might receive a life sentence. After repeatedly affirming his understanding of the possibility of a life sentence on the record, Craig claims that although he "might have known" that a life sentence was possible, "[he] simultaneously believe[d], based on his counsel's advice, that he would not receive that top-of-the-range sentence." Claiming certainty that something "will not" happen is functionally equivalent to believing that thing to be impossible. It was not an abuse of discretion for the district court to find that Craig's on-the-record remarks to the court "flatly contradict[ed]" his current claim about his then-belief.

Even construing Craig's pro se pleadings liberally, *see Thaddeus-X v. Blatter*, 175 F.3d 378, 395 (6th Cir. 1999) (citation omitted), we still conclude that the district court did not abuse its discretion. Craig fails to make out even the more modest and plausible claim that he merely believed a mandatory life sentence to be unlikely. Admittedly, the district court often used "equivocal language"—implying possibility rather than certainty—in discussing the mandatory life sentence. Still, the record contains sufficient information to permit the district court to find "conclusively" that Craig was aware of the circumstances under which a life sentence would be mandatory.

As the district court pointed out, the plea agreement itself states explicitly that the court will be "required . . . to impose a sentence of life imprisonment" if the instant offense qualifies as a serious violent felony.  Given this explicit statement, Craig cannot rely on *Smith v. United States*, 348 F.3d 545, 553 (6th Cir. 2003) (where the record did not contain evidence of the defendant's awareness of his likelihood of conviction and sentencing exposure upon going to trial) or *United States v. Padilla*, 23 F.3d 1220, 1222 (7th Cir. 1994) (where "[f]rom the sparse record . . . it [was] impossible to say that Padilla knew that a statutory minimum of ten years would likely be applicable . . .").  The record in this case contains many references to the mandatory minimum life sentence, equivocation notwithstanding.

Two statements made during the change-of-plea hearing should have further clarified for Craig the likelihood of a mandatory sentence.  First, Craig's attorney stated, "we have had some extensive conversations about the fact that if he has two prior robberies that qualify, and if the court finds that this one qualifies, that it *would* be a life sentence under [§] 3559; but . . . that will be an issue for the court"(emphasis added).  Second, after Craig denied *saying* anything about a gun (as opposed to merely denying use of a gun), the government stated that Ricker would testify to the contrary.  The government then said that the "fight" over the gun threat could be "save[d] for another day" and noted that "it's the defendant's burden to prove that there wasn't a threat and the use of a gun."  The district court apparently accepted this interpretation, because it concluded that "the facts are sufficient . . . to establish that there has, in fact, been a violation of Title 18, section 2113(a), that is bank robbery by force or by intimidation," and subsequently scheduled a hearing on the enhancement issue.  These statements, together with the plea agreement, were sufficient for the

district court to conclude that Craig was aware that § 3559 *would* guarantee him a life sentence if his conviction qualified as a serious violent felony, that the central "fight" with regard to qualification would be regarding whether he threatened gun use, and that the burden of proof would lie with him.

Even if the plea agreement and change-of-plea hearing appear to conclusively refute Craig's claim, he argues that this refutation "can be overcome by subsequent testimony and evidence at an evidentiary hearing," citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). In *Blackledge*, the defendant had stated, as part of a series of form questions, that he understood that he could receive up to a life sentence, but claimed on collateral appeal that his attorney had promised him a ten-year sentence, claiming to have consulted with the prosecutor and the judge. Also, the defendant claimed that his attorney had instructed him to deny the existence of any promises. *Id.* at 68-69, 70. The defendant "did not stop" at alleging "that his plea was induced by an unkept promise," but "elaborate[d] on this claim with specific factual allegations. The petition indicated exactly what the terms of the promise were; when, where, and by whom the promise had been made; and the identity of one witness to its communication." *Id.* at 75-76.

*Blackledge* does not support the finding that the district court abused its discretion in denying Craig an evidentiary hearing. Unlike the very specific factual allegations in *Blackledge*, here, Craig merely asserts that his attorney advised him that he would not receive a life sentence if he pleaded guilty. In his original motion, Craig claimed that his attorney "specifically advised [him] that the court could not sentence [him] to mandatory life under § 3559(c) as long as there was no gun

involved in the robbery," a somewhat different assertion. The timing is not identified, other than "during the plea process." Craig's allegation is more conclusory than specific, unlike *Blackledge*.

The alleged disparity between Craig's life sentence and his possible sentences if he had gone to trial does not make an evidentiary hearing mandatory. Craig cites *Griffin*, 330 F.3d at 739, for the proposition that the "gap between his potential sentence if convicted and the plea offer," on its own, makes an evidentiary hearing mandatory. However, in *Griffin*, all parties acknowledged that the defendant did not know of the plea offer. The only remaining question was whether he would have accepted the plea offer if he had known about it. *See id.* at 738. In that context, where the court needed to determine only what the defendant would have done in a counterfactual scenario, the disparity between sentences was enough to necessitate an evidentiary hearing. In this case, there is no need to explore the counterfactual scenario of what Craig would have done differently. The central question, one which was undisputed in *Griffin*, is whether Craig knew that he might get a mandatory life sentence. If the record shows that he knew, then the inquiry ends. The district court did not abuse its discretion in declining to order an evidentiary hearing solely on the basis of the alleged sentence disparity between Craig's post-plea sentence and his possible sentences after a jury trial.

## III.

For the foregoing reasons, we AFFIRM the district court's decision to deny an evidentiary hearing.