**NOT RECOMMENDED FOR PUBLICATION**
File Name: 19a0398n.06

No. 18-3958

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| | ) | Aug 01, 2019 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| ANTHONY H. LETT, | ) | COURT FOR THE NORTHERN |
| | ) | DISTRICT OF OHIO |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: SUTTON, GRIFFIN, and READLER, Circuit Judges.

GRIFFIN, Circuit Judge.

If bringing a knife to a gun fight is a supremely bad idea, stealing a gun from a gun show is not far behind it. When defendant Anthony Lett tested his luck by attempting the latter, it left him with two federal charges and—after a jury trial—two federal convictions. He now appeals the denial of two pre-trial suppression motions and his sentence. We affirm.

I.

In the spring of 2016, Berea, Ohio hosted a gun show. Anthony Lett and two of his comrades attended it. Lett was a convicted felon and, as such, was prohibited from buying firearms. So he stole one instead.

It all started when one of Lett's companions posed a series of unusual questions to a vendor. After the conversation ended, the vendor noticed that a gun was missing from his table. He notified

police, who sent an officer to take a report. While the vendor spoke with the officer, Lett approached and stole a different gun—picking it up off the table and walking away. Fortunately, the vendor's son, who was at a neighboring table, saw Lett, confronted him, and recovered the gun.

Later in the day, Lett and his other partner in crime stole a third gun from a different vendor. Lett spoke with the vendor to distract him, and Lett's accomplice took one of the vendor's guns and began walking away. The vendor noticed, confronted the man, and recovered the gun. And he, like the other vendor who had been a crime victim that day, reported the theft. That report made its way to an off-duty officer who was working security. As that officer learned of the crime, he saw Lett leaving the show. He had also heard of the previous thefts and therefore knew to keep his eye on Lett. Then a third vendor pointed at Lett and said he was involved in the most recent theft.

Armed with this knowledge, the officer tried to stop Lett. But Lett refused to stop; he said he had not done anything wrong and kept on walking. So the officer physically restrained him. Then three or four more vendors arrived and identified Lett as one of the thieves. Lett later provided his identification, and as the officer verified its accuracy, he learned that Lett had several active arrest warrants. At that point, federal agents who were also at the show stepped in and took Lett to a private area for questioning.

While the agents detained him, they learned that police had yet to apprehend one of his accomplices, who was potentially armed and had entered a hospital. In response, the hospital initiated lockdown procedures and the agents addressed the situation. One agent took Lett's picture with a cellphone, showed the picture to two vendors, and asked them if the picture depicted one of the men they had witnessed stealing guns. The agent did the same with drivers-license

photographs of whom he believed were the other suspects—including the one who had entered the hospital. The vendors confirmed that Lett and the others were the ones who had stolen multiple guns.

The agents eventually arrested Lett, and the government later charged him with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and with possessing a stolen firearm in violation of 18 U.S.C. § 922(j). He then filed two motions to suppress evidence. In the first, he argued that the officer who initially stopped him lacked reasonable suspicion that he had committed a crime. In the second, he claimed that the agent who showed photographs to the vendors violated due process because doing so unduly suggested that Lett was the suspect. The district court denied both motions.

Lett went to trial, where both vendors testified that an agent had shown them a picture they had identified as one of the suspects, and where the agent himself testified that the vendors had identified Lett, specifically. The jury convicted him of both crimes. The district court then sentenced him to 120 months' imprisonment on the first charge and 30 months' imprisonment on the second. The court imposed those sentences consecutive to each other and consecutive to a lengthy state sentence Lett had received for an unrelated crime. This appeal followed.

## II.

Lett challenges the denial of both suppression motions and the district court's decision to run his federal sentences consecutive to his unrelated state one. Thus, we must answer three questions: Did the officer have reasonable suspicion to stop Lett? Was the agent's use of Lett's photograph improper? And did the district court err by imposing consecutive sentences?

*Reasonable Suspicion*. The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."

U.S. Const. amend. IV.  Officers may temporarily seize citizens if the officers have "reasonable" suspicion of criminal activity stemming from "specific and articulable facts" the officers know at the time of the stop.  *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968).  It is not a high bar.  *Navarette v. California*, 572 U.S. 393, 396–97 (2014).  All an officer needs is "a minimal level of objective justification" for the stop.  *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000).

Measured by these considerations, Lett's challenge comes up short.  He argues that the officer was unable "to articulate any facts that would establish the legal conclusion that [he] was engaged in any form of criminal activity" and that the officer detained him "simply because other unknown parties [said] to do so but did not give [the officer] a reason."  Yet the eyewitnesses *did* give the officer a reason to stop Lett:  they identified him as one of the men who had stolen guns.

So did the officer have reasonable suspicion to stop Lett?  Yes.  The eyewitness identifications, alone, created that suspicion.  *See, e.g.*, *United States v. Powell*, 210 F.3d 373 (6th Cir. 2000) (table) ("[A]n officer certainly has 'reasonable suspicion' to rely on a victim's statement that a particular individual is a suspect."); *see also United States v. Marxen*, 410 F.3d 326, 329 (6th Cir. 2005) (holding that an officer had reasonable suspicion to stop a car when an eyewitness to a robbery had identified it as the getaway car); *Gardenhire v. Schubert*, 205 F.3d 303, 317 (6th Cir. 2000) (noting that an eyewitness identification of a suspect, alone, might not create probable cause but *would* create reasonable suspicion).  The district court therefore correctly denied Lett's suppression motion.

*Photograph Identification*.  When an eyewitness relies on photographs to identify a suspect, the government may in turn rely on that identification if the process surrounding it was not so suggestive that it produced a high likelihood of misidentification.  *Simmons v. United States*, 390 U.S. 377, 384 (1968).  Consistent with this standard, a defendant seeking to exclude such an

identification must show that the procedure leading to it was unduly suggestive. *United States v. Sullivan*, 431 F.3d 976, 985 (6th Cir. 2005). If he makes that showing, a court must then consider the totality of the circumstances surrounding the identification to evaluate its reliability. *Id.*

Lett argues that the district court erred by admitting the government's identification evidence, but he has not shown that the process that produced it was unduly suggestive. He claims it was "highly suggestive," but he never explains *why* that was so. Instead of describing what occurred and why it created a likelihood of misidentification, he focuses on what did not happen. Lett emphasizes that the agent never used a blind administrator (someone who does not know the suspect's identity) and never circled back with a lineup of multiple photographs or actual people. That might be correct, but it doesn't benefit Lett because no court has held that due process *requires* those procedures. Indeed, in past cases we have approved the use of identifications that occurred in their absence. *See, e.g.*, *United States v. Watson*, 540 F. App'x 512, 515 (6th Cir. 2013) (noting that whether officers used a blind administrator was "irrelevant" to whether a photographic identification violated due process); *Bruner v. Perini*, 875 F.2d 531, 534–35 (6th Cir. 1989) (approving the admission of identification testimony when the police had not used a lineup and had instead brought the defendant, alone, in front of the eyewitness).

So was the agent's use of Lett's photograph improper? No. Lett has not given us any reason to conclude that it was. And everything about the identifications suggests that the vendors were correct. As the government points out, both venders interacted with Lett that day, speaking with him as he stood just a few feet away. He stole a gun in front of one of them, and he was speaking with the other as his accomplice stole a different gun—events that were sure to stick out from the run-of-the-mill interactions the vendors had that day. And they identified his photograph

the day of the crimes, not weeks or months later. Accordingly, the district court did not err in denying Lett's suppression motion.

*Consecutive Sentences*. When a district court sentences a defendant who is already serving time for another offense, the court must decide whether to run the new sentence consecutively or concurrently to the current one. 18 U.S.C. § 3584(a). To make that decision, the court must consider several factors listed in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3584(b). The Sentencing Guidelines also list several factors the court must keep in mind. *See* USSG § 5G1.3, app. n. 4(A). If the district court considers these factors, it enjoys discretion to impose either type of sentence— consecutive or concurrent. *United States v. Watford*, 468 F.3d 891, 916 (6th Cir. 2006).

Lett takes issue with the consecutive sentences he received. He claims that nothing in the record shows that the district court considered the relevant factors. But his argument encounters a few insurmountable obstacles. First, despite the district court asking if anyone had objections to the sentence, Lett never raised one. Thus, plain-error review applies, *see United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc), which requires Lett to establish that the district court committed (1) an error (2) that was clear or obvious, (3) that affected Lett's substantial rights and (4) that affected the judicial proceedings' fairness, integrity, or public reputation, *id*. But Lett has not attempted to make that showing; he neither mentions the plain-error elements nor makes any argument we could interpret as addressing them.

Second, the district court explained in detail why it imposed the sentence. The government also argued at length that Lett should receive consecutive sentences, even calling it the "main issue" the court needed to decide. And the court then said that the government had "correctly analyzed" the interplay between the various sentencing factors.

So did the district court err by imposing consecutive sentences? No. The record reveals that the district court thoroughly analyzed who Lett was, what he did, and why consecutive sentences were warranted to punish him, protect the public from him, and deter others from committing similar crimes. Lett can show no error—much less an error that was obvious, prejudicial, and unfair.

III.

For these reasons, we affirm Lett's convictions and sentence.